[L. A. No. 12216. In Bank.—December 22, 1932.]

UNITED STATES BUILDING & LOAN ASSOCIATION OF LOS ANGELES (a Corporation), Respondent, v. HAZEL A. SALISBURY, Defendant; CAL F. HUNTER, Appellant.

Charles R. Nelson, Walter F. Haas, H. C. Johnston and Gerald E. Kerrin for Appellant.

Victor Ford Collins and Rex Hardy for Respondent.

THE COURT.—This is an action to foreclose a mortgage upon two lots in the city of Los Angeles. Defendant and cross-complainant, Cal F. Hunter, claimed title in fee to said lots as purchaser under the foreclosure of a deed of trust prior in time to plaintiff's mortgage. He appeals from a judgment for plaintiff, United States Building & Loan Association of Los Angeles, which directed foreclosure as prayed for and decreed his title to be subject to the lien of plaintiff's subsequent mortgage.

The deed of trust through which defendant and cross-complainant claims was, at the time of its execution, subordinate to the lien of a mortgage for $13,500 held by the Bank of America. Thereafter said first mortgage for $13,500 was discharged with funds procured upon the security of the mortgage which plaintiff herein seeks to foreclose, as will more fully appear hereafter. Plaintiff's claim to priority rests upon the following provision in the deed of trust dated June 4, 1925, and recorded July 10, 1925, through which defendant and cross-complainant claims title:

"This deed of Trust is second and subsequent to a mortgage dated February 26, 1925, covering the above described property executed by Edgar D. Sloat and Janis Sloat, his

wife, given to secure a note in favor of Bank of America for $13,500 due three years after date with interest at the rate of 7% per annum, payable quarterly, and the parties of the first part herein named for themselves, their heirs, executors and assigns, reserve the right to pay off said prior mortgage and execute a new note and notes and mortgage to secure the same, covering said property *in any amount* or at any time, and on said terms and conditions as said parties of the first part herein named, their heirs, executors and assigns shall arrange, and such other mortgage when duly executed and recorded, shall be and remain prior and senior to the lien of this Deed of Trust, *with the provision, however, that new mortgage is placed for the purpose of constructing a building on said premises, that all funds derived from said mortgage in excess of $20,000 be actually used in the construction of said building on said premises."* (Italics supplied.)

The mortgage sought to be foreclosed was executed in favor of plaintiff loan association for the sum of $20,000 on September 1, 1927, to secure payment of a loan made by plaintiff to Sloat. With the proceeds of said loan the mortgage of $13,500, referred to above, held by the Bank of America, with interest amounting to $362.25, was discharged and taxes and assessment totaling $1876.35 were paid. The balance, amounting to $4,262.40, was disbursed according to the order of the borrower. It was stipulated that the loan was not obtained for building purposes and that no portion of it was used for such purposes. It is the contention of appellant that by the terms of the deed of trust through which he claims, only a subsequent mortgage executed to secure a loan for building purposes is accorded priority over said deed of trust lien. Respondent argues that a mortgage in an amount not exceeding $20,000 is entitled to priority regardless of the purpose for which the loan is obtained; only where the loan exceeds $20,000 is any portion required to be used for building purposes. The trial court upheld respondent.

The facts preceding the execution of the mortgage sought to be foreclosed, as they appear from the record, are as follows: Sloat and wife, in consideration of the transfer to them of the two lots involved by one Maerz and wife, conveyed other real property to the Maerz and executed in their

favor a note for $20,000, secured by mortgage on said two lots (not to be confused with the $20,000 mortgage sought to be foreclosed herein). By agreement with the Maerz the transaction was so consummated that the mortgage for $13,500 in favor of the Bank of America was placed on the property by the Sloats as a paramount lien to the $20,000 mortgage in favor of the Maerz. The deed to Sloat and wife and the two mortgages were recorded on March 14, 1925. The Sloat-Maerz second mortgage contained a provision authorizing the Sloats, as mortgagors, to pay off the first mortgage for $13,500 and to execute a new mortgage covering said property "for any amount and on any terms and conditions", which new mortgage should be prior and senior to the $20,000 second mortgage. On June 4, 1925, said Sloat-Maerz second mortgage, and the note for $20,000 which it was given to secure, were replaced by a new note, also for $20,000, and the deed of trust executed in favor of Maerz and wife under which cross-complainant, as purchaser at the trustee's sale, claims title in the action herein. Said deed of trust contains the limited priority provision above quoted, the construction of which is the issue in the instant case. Maerz and wife, beneficiaries under said deed of trust, pledged the note and deed of trust in 1926 to Hunter, cross-complainant, who purchased the property in June, 1928, under foreclosure of said deed of trust, for $10,281.89, the amount owing to him from the Maerz. It does not appear why or at whose request the mortgage not yet due was replaced by the deed of trust on the same property, nor was the reason for changing the terms of the priority provision to differ from those of the original mortgage provision brought out.

In September, 1927, the Sloats obtained a loan of $20,000 from plaintiff loan association, to secure which the mortgage for $20,000 herein sought to be foreclosed as a first lien was executed by Hazel A. Salisbury, who held record title to the property for the convenience of the real parties in interest. The question to be determined is whether said mortgage was entitled to priority although no portion of the loan it secured was used for building purposes.

In arguing for the priority of its $20,000 mortgage in its opening brief, plaintiff states that it is obvious that the word "if" was inadvertently omitted, and upon the inser-

tion of this single word the whole context becomes clear. The priority provision would then read: "with the provision, however, that *if* new mortgage is placed for the purpose of constructing a building on said premises, that all funds derived from said mortgage in excess of $20,000 be actually used in the construction of said building on said premises". As thus revised the obligation to use all funds in excess of $20,000 for construction is conditioned on the loan having been obtained for building purposes. If the loan were not obtained for building purposes, it would receive priority regardless of amount under the preceding portions of the provision according priority to a loan "in any amount". A condition which would permit the owner to place a superior lien on the property without limitation as to amount, and at the same time specify that he must use all funds over $20,000 for construction purposes *if* the loan should chance to be obtained for building, would be manifestly absurd and lacking in value to the second lienholder.

In its petition for hearing in this court respondent receded from the extreme position in which a *verbatim* reading of the provision with the interpolation of the word "if" would place it. It concedes that the surplus over $20,000 must in any event be used for building to entitle the subsequent mortgagee to priority, but argues that since the owner is required to use only the surplus over $20,000 for building if the loan exceed that amount, he should not be required to use any portion for building if the loan is for $20,000 or less. To arrive at this meaning it is not enough to insert the single word "if" preceding the words "new mortgage" in the priority provision, but it is necessary to imply following the phrase "with the provision, however, that new mortgage is placed for the purpose of constructing a building" the additional words "if it exceeds $20,000". With these words implied, said clause would then read "that new mortgage is placed for purpose of constructing a building if it exceeds $20,000". Said clause would then be superfluous, since necessarily embraced within the concluding provision "that all funds derived from said mortgage in excess of $20,000 be actually used in the construction of said building on said premises".

Courts should proceed cautiously in supplying a provision by implication which the parties have omitted from their

written contract. (*Foley* v. *Euless*, 214 Cal. 506 [6 Pac. (2d) 956].) Words should not be added where the omission may have been intentional.

The original second mortgage authorized the owner of the property to place a subsequent mortgage upon it which should be a first lien *"for any amount and on any terms and conditions"*. In the case herein no extrinsic evidence was introduced as to the circumstances surrounding the substitution of the new note and second deed of trust for the original note and second mortgage, and the inclusion in the deed of trust of the limited priority provision differing materially from the absolute provision in the original second mortgage. In our opinion the priority provision is sufficiently doubtful of meaning to admit of evidence of the circumstances surrounding the transaction, with a view to establishing the intent of the parties. (Secs. 1856, 1860, Code Civ. Proc.; sec. 1647, Civ. Code; see discussion with citation of numerous authorities, 6 Cal. Jur. 294.) The difficulty in the instant case is that such evidence has not been produced. It does not even appear why or at whose request the change was made. The original second mortgage was executed by Sloat and wife, the deed of trust given in substitution therefor by one Bonzagni and wife. However, the inference to be drawn from the proof is that Bonzagni did not have a beneficial interest, but merely held title for the convenience of Sloat.

Sloat did testify that the change was made with the understanding that the $20,000 Sloat-Maerz second mortgage should be returned to him, but this testimony was ordered stricken out on the objection of cross-complainant's counsel. It is, however, apparent from the nature of the transaction that the effect of the change was to release Sloat from personal liability on his $20,000 note to Maerz, which was canceled. It may be that in consideration of relieving Sloat from personal liability on the second mortgage note, Maerz required that the restriction be placed upon the priority provision. The obvious purpose is to protect the value of the second lienholder's security. In view of the apparent intention of the parties that the owner should be permitted to "pay off" the $13,500 first mortgage held by the Bank of America from the proceeds of the new loan, it was not required that the entire amount of the new loan be used for

actual construction purposes. The parties may have antici-
pated that it would require approximately $20,000 to dis-
charge the original mortgage of $13,500 which interest, to
clear the property of the lien of taxes and assessments, and
to pay expenses incident to obtaining a new loan in a larger
amount, including a possible loan brokerage commission on a
large loan, and discharge other incidental expenses.

On the other hand, the figure of $20,000 may have been
fixed because the holder of the second lien deemed the land,
with the then existing improvements, of sufficient value to
secure his second lien, although subject to a first mortgage
of $20,000, and wished to consent to the owner borrowing
an amount up to $20,000 without restriction as to use.
This, the vital point to establish plaintiff's contention, was
not developed upon the trial by evidence of the circum-
stances surrounding the transaction. Surely the figure of
$20,000 was fixed only after discussion. To introduce evi-
dence of the negotiations attending the change was the
plainly indicated course of procedure for plaintiff's counsel.
Yet counsel for each party objected to questions put by
the other which seemed likely to lead to an explanation.
The court also seems to have been of the view that the
transaction should be determined from the provisions of the
instrument alone.

▮ The instrument is sufficiently ambiguous and doubt-
ful in meaning to admit of extrinsic evidence. But in the
absence of evidence as to the intent of the parties, we can-
not add to the instrument by implication, but must adhere
to the literal terms of the priority provision. The decision
of the trial court for plaintiff must be reversed. Upon a
retrial, plaintiff may offer evidence of the circumstances
surrounding the execution of the deed of trust and the
placing of the restrictions on the priority provision, with
a view to establish the intent of the parties that the re-
striction as to building did not apply to a loan of $20,000 or
less.

▮ For the reason that plaintiff may, however, be
unable to establish priority to the amount of $20,000, we
will consider briefly whether, in that event, it is entitled to
priority to the extent of $13,500, the amount of the original
first mortgage. This point must be decided in plaintiff's
favor. The mortgage for $13,500 and the note it secured

were executed in favor of the Bank of America, and said bank was paid in full with funds loaned to the mortgagor, Sloat, by plaintiff. The mortgage was discharged of record. Plaintiff made the advance of $20,000, relying on the priority provision contained in the junior deed of trust, with the intention that the mortgage made to it by the borrower should be a first lien. The action herein has been brought within the time when an action could be maintained to foreclose the original $13,500 mortgage. In the event that plaintiff should fail to establish its priority to the extent of $20,000, it should be given partial relief in equity from its mistake by according it priority to the amount of $13,500, plus interest paid to the Bank of America on said note, and interest accruing since the date of payment at seven per cent, the rate specified on the $13,500 note. Cross-complainant, as the successor of the second lienholder, will thus be given all rights for which the second lienholder contracted, and left in the precise position where he would have been had not plaintiff, acting under mistake, caused the first mortgage to be discharged. In equity and justice he cannot ask for more. Maerz, to whose rights cross-complainant succeeded, did not stipulate for a first lien.

■ There is abundant authority throughout the country to the effect that where the holder of an outstanding senior mortgage through mistake discharges it of record and contemporaneously takes a renewal mortgage, he will not in the absence of paramount equities be held to have subordinated his security to an intervening lien. (An exhaustive annotation is found in 33 A. L. R. 149.) The rule has recently been applied in this state in *Parker* v. *Tout,* 207 Cal. 590 [279 Pac. 431]. (See, also, *Shaffer* v. *McCloskey,* 101 Cal. 576 [36 Pac. 196]; *Van Sandt* v. *Alvis,* 109 Cal. 165 [41 Pac. 1014, 50 Am. St. Rep. 25]; *White* v. *Stevenson,* 144 Cal. 104 [77 Pac. 828]; *Cherry* v. *Welsher,* 195 Iowa, 640 [192 N. W. 149]; *Emmert* v. *Thompson,* 49 Minn. 386 [52 N. W. 31, 32 Am. St. Rep. 566].) A similar equity exists in favor of plaintiff, who is not the original first mortgagee, but who has loaned funds to the mortgagor with which said first mortgage has been discharged of record upon the faith of obtaining a first lien. (See *Emmert* v. *Thompson, supra.*)

In conclusion, the judgment allowing plaintiff priority to the full amount of $20,000 is erroneous upon the record before us, and must be reversed. Upon further proceedings in the trial court, plaintiff may offer additional proof, along the lines indicated above, to establish its priority to the full amount of $20,000, or failing that, establish its right to priority as to the $13,500 item.

The judgment is reversed.

Rehearing denied.